```
 1  NICOLA T. HANNA
    United States Attorney
 2  LAWRENCE S. MIDDLETON
    Assistant United States Attorney
 3  Chief, Criminal Division
    JOHN J. LULEJIAN (Cal. Bar No. 186783)
 4  Assistant United States Attorney
         1200 United States Courthouse
 5       312 North Spring Street
         Los Angeles, California 90012
 6       Telephone: (213) 894-0721
         Facsimile: (213) 894-0141
 7       E-mail:    John.Lulejian@usdoj.gov

 8  Attorneys for Plaintiff
    UNITED STATES OF AMERICA
 9
10                   UNITED STATES DISTRICT COURT
11              FOR THE CENTRAL DISTRICT OF CALIFORNIA
```

| | |
|---|---|
| 12  IN THE MATTER OF THE<br>    EXTRADITION OF<br>13<br>    JINHEE KIM<br>14    aka "Jordan Kim,"<br>15       A Fugitive from the<br>       Government of the<br>16       Republic of Korea. | No. **18 MJ03169**<br>COMPLAINT<br><br>FOR ARREST WARRANT AND<br>EXTRADITION; ORDER THEREON |

```
17
18  TO:  Honorable Paul L. Abrams
         United States Magistrate Judge
19       Central District of California

20       I, JOHN J. LULEJIAN, being duly sworn, depose and state that I
21  am an Assistant United States Attorney for the Central District of
22  California and act for the United States in fulfilling its
23  obligations to the Government of the Republic of Korea ("Korea")
24  pursuant to the Extradition Treaty Between the Government of the
25  United States of America and the Government of the Republic of Korea,
26  U.K.-S. Korea, June 9, 1998, S. Treaty Doc. No. 106-2 (1999) (the
27  "Extradition Treaty"), with respect to the fugitive, JINHEE KIM, also
28  known as "Jordan Kim" ("KIM").
```

In accordance with Title 18, United States Code, Section 3184, I charge on information and belief as follows:

1. That, pursuant to the Extradition Treaty which is in force between the United States and Korea, the Government of Korea has submitted a formal request through diplomatic channels for the extradition of KIM, a naturalized United States citizen.[1]

2. That I am informed through diplomatic channels that KIM is sought in Korea for embezzlement, counterfeiting, and uttering of false documents, in violation of Articles 231, 234, 355, and 356 of Korea's Criminal Act, and Article 3(1) of Korea's Act on the Aggravated Punishment, Etc. of Specific Economic Crimes. I am further informed that a warrant for KIM's arrest on those charges was issued on December 21, 2012, by Judge Yu Seung-Won of the Seoul Central District Court in Seoul, Korea.

3. That on June 29, 2017, the Honorable Roy B. Dalton, Jr., United States District Judge for the Middle District of Florida, issued an arrest warrant for KIM based on a Complaint Affidavit in Support of Request for Extradition ("Florida Complaint").[2] True and correct copies of the Florida Complaint and arrest warrant are attached hereto as Exhibits A and B, and incorporated herein by reference as if set forth in full.

4. That the extradition request contains, among other documents, a prosecutor's statement, witness statements, and an

---

[1] The government will attach the materials from the United States Department of State, which contain Korea's extradition request, when it files its Request for Extradition. The government, however, will provide a copy of these documents to KIM's counsel at the initial appearance.

[2] At that time, law enforcement believed that KIM was residing in Longwood, Florida. The United States intends to unseal and dismiss the Florida Complaint forthwith.

investigative report.  I have reviewed the extradition request and note that the following facts, which were set forth in the Florida Complaint and incorporated herein by reference, may reasonably be derived from those documents:

      a.  KIM was the finance manager at the Korean branch office of Emirates ("Emirates Korea"), an airline company based in Dubai, between approximately March 2005 and August 2012.  Between approximately January 2006 and May 2012, KIM embezzled a total of approximately KRW 36,230,168,648 (approximately USD 32,406,233) from Emirates Korea.[3]  KIM carried out his embezzlement scheme by forging the signature of Emirates Korea's country manager, Lee Sang-Jin ("Lee"), on bank payment vouchers.  KIM then used those vouchers to transfer funds from Emirates Korea's bank account to his own accounts, his wife's accounts, and accounts of three associates.

      b.  Emirates Korea banked with Korea Exchange Bank ("KEB") until May 2012.  Individual fund transfers at or above KRW 16,000,000 required approval from headquarters, Emirates Dubai.  However, transfers below that amount could be approved with payment vouchers signed by both KIM and Lee and faxed to KEB.

      c.  KIM forged Lee's signature on payment vouchers by cutting and pasting the image file of Lee's signature and affixing it to the payment vouchers.  KIM then sent the vouchers to KEB to request transfers of funds into his bank accounts and those of his wife, and three associates.  Each of these transfers involved between KRW 13,000,000 and KRW 16,000,000.  In total, KIM made about 2,481 unauthorized transfers from Emirates Korea's KEB account.

---

[3] On November 29, 2018, USD 1 equaled approximately KRW 1,118 South Korean Won ("SKW").

     d.    When a staff member of the finance team became suspicious about the transactions, KIM reportedly told the staff member to mind her own business, and so she no longer raised questions.

     e.    To account for the embezzled funds and to avoid detection of his scheme, KIM falsely recorded payments to credit card companies on the pretext that the card companies had overpaid Emirates Korea, and Emirates Korea was refunding the overpayments to the card companies.

     f.    KIM and his wife used the embezzled funds to live a luxuriant lifestyle. Among other things, KIM gambled away KRW 7,384,630,000 (approximately USD 6,605,215) in casinos. He also purchased numerous imported luxury automobiles, both for himself and for his friends, as well as luxury watches and golf club memberships. He also bought an expensive residential parcel of land for approximately KRW 1,775,000,000 (approximately USD 1,587,657) and began constructing a house on it, leased an apartment, and made investments with the embezzled funds.

     g.    KIM's fraudulent activity ceased after Emirates Korea switched banks from KEB to Citibank in May 2012. KIM and his wife fled Korea in August 2012, shortly before Emirates Korea officials discovered KIM's embezzlement scheme.

     h.    An investigation into the embezzlement scheme revealed that KIM parked the debts resulting from his embezzlement in the accounts of the credit card companies that did business with Emirates Korea. Emirates Korea was able to trace transactions in those accounts to KIM's personal bank accounts.

5. On November 28, 2018, KIM surrendered himself to the United States Marshals Service ("USMS") in Los Angeles, California. On that same day, following KIM's initial appearance, the Honorable Michael R. Wilner, United States Magistrate Judge for the Central District of California, ordered him detained. Thus, KIM currently is in the custody of the USMS in this District, placing him within the jurisdiction of this Court.

6. Elizabeth M. M. O'Connor, an attorney in the Office of the Legal Adviser of the United States Department of State, has provided the Department of Justice with a declaration authenticating a copy of the diplomatic notes by which the request for extradition was made and a copy of the extradition treaty between the United States and the Republic of Korea, stating that the offenses for which extradition is demanded are covered by the treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal United States consular officer in the Republic of Korea, in accordance with Title 18, United States Code, Section 3190, so as to enable them to be received in evidence.

WHEREUPON, complainant requests that a warrant be issued, based on probable cause, pursuant to Title 18, United States Code, Section 3184, for the arrest of KIM; that KIM be brought before this Court so that the evidence of criminality may be heard; that if on such hearing this Court deems the evidence sufficient under the provisions of the Extradition Treaty to sustain the charge, the Court certify the same to the Secretary of State in order that a warrant may issue for the surrender of KIM to the appropriate authorities of the requesting state, the Republic of Korea, according to the

Extradition Treaty; and that this Court take such other actions as this Court is required.

DATED: This 29th day of November, 2018, at Los Angeles, California.

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

/s/
_____
JOHN J. LULEJIAN
Assistant United States Attorney

Attorneys for Complainant
UNITED STATES OF AMERICA

Subscribed and sworn to before me this 29th day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

2017 JUN 30 AM 8:52

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

IN THE MATTER OF THE
EXTRADITION OF
JINHEE KIM, A/K/A
JORDAN KIM

MISC. NO. 6:17-mc-3/-ORL-

## COMPLAINT AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I act for and on behalf of the Government of the Republic of Korea ("Requesting State").

2. There is an extradition treaty in force between the United States and the Republic of Korea, Extradition Treaty between the Government of the United States of America and the Government of the Republic of Korea, U.S.-S. Kor., June 9, 1998, S. Treaty Doc. No. 106-2 (1999) ("the Treaty").

3. Pursuant to the Treaty, the Republic of Korea has submitted a formal request through diplomatic channels for the extradition of Jinhee KIM, also known as Jordan KIM ("KIM").

4. KIM is wanted for embezzlement and counterfeiting, in violation of Articles 355, 356, 231, and 234 of the Criminal Act, committed within the jurisdiction of the Requesting State; and a warrant for his arrest was issued on December 21, 2012, by Judge Yu Seung-Won of the Central District Court in

I CERTIFY THE FOREGOING TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
BY: _____
DEPUTY CLERK

Seoul, Korea.

5.   The warrant was issued on the basis of the following facts: KIM was finance manager at the Korean branch office of Emirates ("Emirates Korea"), an airline company based in Dubai from March 2005 through August 2012. From January 2006 to May 2012, KIM embezzled a total of approximately Korean Won ("KRW") 36,230,168,648 (about USD 32,327,092) from Emirates Korea. KIM carried out his embezzlement scheme by forging the signature of Emirates Korea's country manager on bank payment vouchers, and using those vouchers to transfer funds from Emirates Korea's bank account to KIM's own accounts, his wife's accounts, and accounts of three associates. Kim left Korea in August 2012 and has not returned since.

Overview of the Embezzlement Scheme

6.   Emirates Korea had their company bank account with Korea Exchange Bank ("KEB") until May 2012. As finance manager, KIM was in charge of tracking and managing Emirates Korea's money flow, and emitting sales information and funds from Korea to the Emirates head office in Dubai. Transfers of funds out of the company's KEB account had to be accompanied by payment vouchers signed by both KIM and by Emirates Korea's country manager, Sang-Jin LEE ("LEE").

7.   KIM forged LEE's signature on payment vouchers and sent the vouchers to KEB to request transfers of funds into the bank accounts of KIM, his wife, and three other associates. Each of these transfers involved between

2

KRW 13,000,000 and KRW 16,000,000 (the maximum amount for a one-time transfer).[1] KIM broke down the payments into multiple "references," in order to stay under the maximum amount for each transaction. In total, KIM made about 2,481 unauthorized transfers from Emirates Korea's KEB account. These transfers continued through May 2012, when Emirates Korea closed their account with KEB and began banking with Citibank.

8. KIM manipulated the company's credit card settlement process in order to facilitate his embezzlement scheme. Many of the airline tickets sold by Emirates are issued at travel agencies. Those ticket sales are reported to a Billing and Settlement Plan ("BSP"), which is an electronic billing system set up to manage the flow of funds and data between travel agencies and airlines. The BSP then reports the sales to Emirates Korea, which enters the sales into their accounting system as "Amounts Receivable." For purchases made at travel agencies using credit cards, the credit card companies directly transferred the funds into Emirates Korea's bank account, after deducting their own service fees. It usually takes seven to ten days from the time of purchase for the funds from credit card sales to be deposited into Emirates Korea's account. The Emirates Korea finance team then updates the accounting system with "Amounts Received." Once the amounts are deposited, the

---

[1] Any transfer of funds lower than KRW 16,000,000 only required the signatures of the country manager and finance manager, while transfers of KRW 16,000,000 or higher required the signature of the finance manager at Emirates' Dubai headquarters.

3

money is transferred to the head office in Dubai on a weekly basis.

9. In order to cover up the amounts he was embezzling, KIM made entries into the accounting system falsely showing that credit card companies had overpaid Emirates Korea, and that they needed to be refunded. KIM tried to explain away discrepancies by stating that the credit card companies take up to two months (not seven to ten days) to deposit money into Emirates Korea's account and that any error in billing required KIM to return the entire amount of the transaction to the credit card company. After KIM recorded these refund payments to the credit card companies in the system, KIM faxed payment vouchers to the bank. However, the actual vouchers instructed KEB to transfer the funds to the accounts of KIM, his wife, and associates, and not to the credit card companies. Additionally, KIM forged the signature of LEE on each of the payment vouchers.

10. Emirates Korea was not subject to independent audits in Korea, so the only oversight of the finance department's activities came from the head office. As long as the money and accounting numbers sent to the head office added up and were consistent, no red flags would be raised. The KEB bank statements showing KIM's unauthorized transfers did not include the names of the payees, so this information did not show up during any audits by the head office. When Emirates Korea received the bank statements from KEB, KIM himself reconciled them with the numbers in the company's accounting

4

system, and did not allow other finance team employees to carry out this activity. When other members of the finance team raised concerns about some of the transactions, KIM told them he was addressing the issue and that they should mind their own business. In addition to manipulating the numbers in the accounting system, KIM also provided the head office with false information about the ticket sales process, in order to avoid suspicion.

### KIM's Spending of the Embezzled Funds

11. KIM and his wife used the embezzled funds to live a luxuriant lifestyle. Among other things, KIM gambled away KRW 7,384,630,000 (USD 6,565,574) in casinos. KIM also purchased numerous imported luxury automobiles, both for himself and for his friends, as well as luxury watches and golf club memberships. He bought an expensive parcel of land for KRW 1,775,000,000 (USD 1,578,1289) and began constructing a house on it, leased an apartment, and made other real estate investments through a company he created. KIM often transferred the embezzled funds from his or his wife's accounts into the accounts of friends and associates, and then asked those individuals to withdraw the funds and deliver the cash to KIM. Through these transfers, KIM tried to avoid coming under suspicion for withdrawing large sums of money.

12. KIM's fraudulent activity ceased after Emirates Korea switched banks from KEB to Citibank in May 2012. Various individuals at Emirates

Korea continued to raise concerns about the large number of suspicious transactions and the amounts involved. KIM and his wife fled Korea in August 2012, shortly before KIM's embezzlement scheme was uncovered by Emirates Korea officials.

13. KIM may be found within the jurisdiction of this Court at 2008 Alaqua Drive, Longwood, FL 32779, which is where KIM resides.

14. Elizabeth O'Connor, an attorney in the Office of the Legal Adviser of the United States Department of State, has provided the Department of Justice with a declaration authenticating a copy of the diplomatic notes by which the request for extradition was made and a copy of the extradition treaty between the United States and the Republic of Korea, stating that the offenses for which extradition is demanded are covered by the treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal United States consular officer in the Republic of Korea, in accordance with 18 U.S.C. § 3190, so as to enable them to be received in evidence.

15. The declaration from the Department of State, with its attachments, including a copy of the diplomatic notes from the requesting state, a copy of the relevant extradition treaty, and the certified documents submitted in support of the request (marked collectively as Government's Exhibit Number 1) are filed with this complaint and incorporated by reference

herein.

16. The person named above would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with the extradition treaty between the United States and the Republic of Korea, and 18 U.S.C. § 3184, so that the fugitive may be arrested and brought before this Court "to the end that the evidence of criminality may be heard and considered," and that this complaint and warrant be placed under the seal of the court until such time as the warrant is executed.

_____
James D. Mandolfo
Assistant United States Attorney

Sworn to before me and subscribed
in my presence this 29 day of June, 2017.

_____
The Honorable Roy B. Dalton, Jr.
United States District Judge

# EXHIBIT B

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

SEALED

In the matter of the Extradition of Jinhee Kim, a/k/a Jordan Kim )
)
) Case No. 6:17-mj- 31-621-37KRS
)
)
)
)

Defendant

I CERTIFY THE FOREGOING TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
BY: _____
DEPUTY CLERK

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* Jinhee Kim, a/k/a Jordan Kim ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 3184: Fugitive from foreign country to United States

Date: 6/29/17

_____
Issuing officer's signature

City and state: Orlando, FL

ROY B. DALTON, Jr., U.S. District Judge
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

AO 442 (Rev. 11/11) Arrest Warrant (Page 2)

This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.

*(Not for Public Disclosure)*

Name of defendant/offender: Jinhee Kim
Known aliases: Jordan Kim
Last known residence: _____
Prior addresses to which defendant/offender may still have ties: _____

Last known employment: _____
Last known telephone numbers: _____
Place of birth: _____
Date of birth: _____
Social Security number: _____
Height: _____ Weight: _____
Sex: _____ Race: _____
Hair: _____ Eyes: _____
Scars, tattoos, other distinguishing marks: _____

History of violence, weapons, drug use: _____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

FBI number: _____
Complete description of auto: _____

Investigative agency and address: _____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____